# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 22, 2017

Lyle W. Cayce
Clerk

No. 16-20291

————

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, as Subrogee of Transmontaigne Product Services, Incorporated,

      Plaintiff - Appellant

v.

EXXONMOBIL GAS & POWER MARKETING COMPANY, a Division of Exxon Mobil Corporation,

      Defendant - Appellee

———————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-3315

———————

Before SMITH, PRADO, and GRAVES, Circuit Judges.

PER CURIAM:*

    National Union Fire Insurance Company of Pittsburgh PA ("National Union") appeals the district court's dismissal without prejudice of its claim against ExxonMobil Gas & Power Marketing Company ("ExxonMobil"). Because National Union did not plead for damages in a form recoverable under

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20291

the Propane Sales Agreement ("Agreement") entered into by its subrogor, TransMontaigne Product Services, Inc. ("TransMontaigne"), we AFFIRM the district court's judgment.

I.

TransMontaigne has an exclusive lease on the Ella-Brownsville Pipeline, which it uses to supply liquefied petroleum gas, also known as propane or butane, to its customer Nieto Trading B.V. ("Nieto"). On November 1, 2012, TransMontaigne and ExxonMobil entered into the Agreement, according to which ExxonMobil would sell, and TransMontaigne would purchase, all propane produced at ExxonMobil's King Ranch Gas Plant. When the King Ranch was damaged due to fire on November 13, 2013, ExxonMobil asserted that it was no longer required to perform under the Agreement due to a "Force Majeure" event.

As subrogee of TransMontaigne, National Union sued ExxonMobil, claiming breach of the Agreement due to non-performance. In its complaint, National Union described its theory of damages as "the market price / contract price formula under Tex. Bus. & Comm. [sic] Code § 2.173; i.e. the difference between the market price at the time when the buyer learned of the breach and the contract price, but less expenses saved in consequence of the seller's breach." But it also stated that "the damages sustained by TransMontaigne was $1,129,316, calculated from the lost revenue of the difference in market price to Nieto Trading B.V. from the contract price from ExxonMobil."

On March 7, 2016, ExxonMobil moved to dismiss National Union's claim on grounds that National Union pleaded for damages in the form of lost profits, which are expressly non-recoverable under the Agreement. On April 13, 2016, the district court dismissed National Union's claim without prejudice; however, it did not issue a reasoned opinion explaining the dismissal. National Union appeals from the district court's dismissal.

No. 16-20291

II.

We "apply a less stringent standard of review to a District Court's dismissal of a suit without prejudice, because the plaintiff would be able to file his suit again." *Boazman v. Econs. Lab., Inc.*, 537 F.2d 210, 212-13 (5th Cir. 1976). In addition, in this diversity action we "apply state substantive and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

National Union contends that it did not plead for "lost profits," which it acknowledges would be non-recoverable; therefore, its claim should have been allowed to proceed. This argument is unpersuasive. Under Texas law, "[l]ost profits are damages for the loss of net income to a business measured by reasonable certainty." *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002). Here, National Union's complaint states that the damages TransMontaigne sustained are "$1,129,316, calculated from the lost revenue of the difference in market price to Nieto Trading B.V. from the contract price from ExxonMobil." This language highlights the fatal flaw in its argument: The difference in the amount that TransMontaigne would have received from Nieto minus the amount it would have paid ExxonMobil describes TransMontaigne's "loss of net income," which, in turn, is "lost profits" under Texas law. *Id*. Lost profits are non-recoverable under the Agreement. National Union's claim was correctly dismissed.

In the alternative, National Union contends that "a limitation precluding recovery of . . . lost profits would be unenforceable pursuant to Tex. Bus. & Comm. [sic] Code § 2.719(b)." It also contends that "a limitation of recovery of direct lost profits conflicts with other provisions of the [Agreement], and as such creates an ambiguity precluding dismissal . . . ." Neither argument is persuasive. Tex. Bus. & Com. Code § 2.719(b) only applies when "the remedy

3

No. 16-20291

is expressly agreed to be exclusive, in which case it is the sole remedy." § 2.719(a)(2). Here, the parties did not agree to an exclusive remedy. *Id.* In addition, the Agreement is not ambiguous regarding whether lost profits are recoverable. It clearly states that they are not.

AFFIRMED.